UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                  No. 1:24-cr-155

      vs.                       Hon. Robert J. Jonker
                                      U.S. District Judge

WILLIAM CHRISTOPHER VANDENBERGE,

          Defendant.

_____/

## **GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant, a thirteen-time felon, stole a loaded gun. When the owner of the gun, T.T., asked for it to be returned, Defendant mailed the firearm via United States Postal Service. The firearm was intercepted by law enforcement. T.T. obtained a Personal Protection Order against Defendant. Since Defendant has been in custody, he has violated that order on multiple occasions, including after the presentence report was finalized. The presentence report prepared by the United States Probation Office establishes that the advisory guideline range is an offense level of 13 with a criminal history category of V, resulting in 30-37 months' imprisonment. (R.26: PSR, PageID.103 ¶ 106.) The Government objects to applying the reduction for acceptance of responsibility; the guidelines should be calculated at offense level 16, which would yield 41-51 months' imprisonment. The Government recommends a sentence within this higher guideline range.

## I.    OFFENSE BACKGROUND

On January 2, 2024, T.T. contacted St. Joseph County Sheriff's Department to report that her ex-boyfriend, Vandenberge, had stolen her firearm, a Sarsilmaz SAR 9 pistol with the serial number T1102-21BV37650. (R.26: PSR, PageID.78 ¶ 7.) T.T. purchased the firearm locally in Michigan and kept it at her residence in St. Joseph. (*Id.* at ¶ 11.) She took a trip with Vandenberge in late 2023 to New York. Vandenberge did not return to St. Joseph with T.T., and upon her return she discovered that her firearm was missing. (*Id.*)

When T.T. contacted Vandenberge to ask about the whereabouts of her gun, he told her that he would mail the firearm back to her. (R.26: PSR, PageID.78 ¶ 7.) He sent her a picture of the tracking number and receipt. (*Id.*). Vandenberge also told T.T. that he had taken ammunition and had stored it under the back seat of the vehicle they had used for their New York trip (*Id.*) T.T. reported this information to the United States Postal Inspection Service, who intercepted the package and confirmed it contained the pistol. (*Id.*)

A Federal Grand Jury indicted Vandenberge on October 8, 2024, and authorities arrested him the following day. (*Id.* at PageID.76 ¶¶ 1, 4.) Following his Miranda advisement, Vandenberge denied possessing the firearm but admitted to firing it and acknowledged that his fingerprints would likely be found on the weapon. (*Id.* at PageID.78 ¶¶ 10-11.)

Vandenberge pled guilty to the indictment on October 29, 2024 and sentencing is scheduled for April 3, 2025.

## II.    RELATIONSHIP WITH T.T. AND PATTERN OF VIOLATIONS

At the time of the offense, Vandenberge and T.T. had been in a relationship for several years. The relationship initially ended during their trip to New York in late 2023 when Vandenberge left the hotel they were staying in and took T.T.'s firearm, some money and some blank checks from her checkbook. (R.26: PSR, PageID.97 ¶ 70.) The checks were cashed to Vandenberge's cousin on January 2, 4, and 11, 2024. (*Id.*)

### A.  History of Protection Order and Violations

On June 6, 2024, T.T. filed a petition for a Personal Protection Order against Vandenberge in the 45th Circuit Court. (*See* Government's Exhibit 1.) In the supplement to the request, T.T. stated that Vandenberge had stolen money from her, grabbed her arm and split it open, and threatened to destroy her and her property. (*Id.* at page 3). The court granted the protective order and specifically ordered that Vandenberge was prohibited from "sending mail or other communications to petitioner". (*Id.* at Page 7.)

On September 28, 2024, Vandenberge was arrested at T.T.'s residence. (R.26: PSR, PageID.95 ¶ 65.) T.T. called police when Vandenberge refused to leave her home even though there was a valid protective order in place. (*Id.*) Deputies physically struggled to remove Vandenberge from T.T.'s home. During this encounter, Vandenberge ominously asked deputies what would happen to him if he killed T.T.— a clear threat against the victim's life. (*Id.*) He further escalated the situation by threatening the arresting deputy and the deputy's family (*Id.*)

3

B. **Continuing Pattern of Harassment While in Custody**

Vandenberge was taken into Federal custody after his indictment on October 8, 2024. On October 11, 2024, Magistrate Judge Ray Kent ordered him detained pending trial, in part due to his violation of the protective order, and threats to T.T. In October 2024, T.T. reported to the United States Attorney's Office that Vandenberge had continued to attempt to contact her from Newaygo County Jail. Vandenberge sent her letters and postcards, contacted her cell phone via text and call, and attempted to call one of T.T.'s friends. The United States Marshall's Service put screening in place, and blocked Vandenberge from being able to call T.T.

In November 2024, Acting Chief Deputy U.S. Marshal Benjamin Walkington met with Vandenberge and made it clear that he was to have no contact with T.T. either directly or indirectly. Vandenberge agreed to cease contacting T.T. However, on March 3, 2025, Newaygo intercepted another letter from Vandenberge to T.T. (*See* Government's Exhibit 2.) In preparation for sentencing, the Government became aware of yet another letter which was intercepted on January 15, 2025. (*See* Government's Exhibit 3.)

The Government anticipates eliciting testimony from Acting Chief Deputy Walkington at sentencing.

**III. ARGUMENT**

The first step in the sentencing process is to calculate the advisory Guideline range applicable to the offense of conviction. Here, the parties agree that

4

Vandenberge's adjusted offense level is 16 and that his felony record puts him in criminal history category V. The PSR writer states that the defendant has clearly demonstrated acceptance of responsibility for the offense. While that seemed true at the time the final PSR was released, Vandenberge's continued disregard of court orders and harassment of the victim clearly indicates otherwise now.

### A. <u>Legal Standard for Acceptance of Responsibility</u>

To receive a two-level reduction pursuant to U.S.S.G § 3E1.1, a defendant must "clearly demonstrate[] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(A). A defendant bears the burden of proving his or her acceptance of responsibility by a preponderance of the evidence. *United States v. Bacon,* 617 F.3d 452, 458 (6th Cir. 2010.) One relevant factor is whether the defendant "had voluntarily terminated or withdrawn from criminal conduct." *United States v. Lawson,* 266 F.3d (462, 46 (6th Cir. 2001); *see also* U.S.S.G. § 3E1.1, cmt. 1(B). Criminal conduct in this context "refer[s] to that conduct which is related to the underlying offense." *United States v. Morrison*, 983 F.2d 730, 733 (6th Cir. 1993).

The Sixth Circuit has upheld district court decisions to deny reductions for acceptance of responsibility when the actions of the defendant do not "square with acceptance." *See United States v. Benjamin*, 138 F.3d 1069, 1075 (6th Cir. 1998) (denying acceptance of responsibility reduction where defendant pleaded guilty to conspiracy to distribute cocaine but post-plea violated the terms of his pre-sentencing release by possessing a firearm while on bond); *Lawson,* 266 F.3d at 466 (defendant's

initial "firearm charge arose from his August 1997  escape from custody" and "he attempted a similar escape in April 1999").

### B. Defendant's Ongoing Related Criminal Conduct

Here, Vandenberge's ongoing criminal conduct is closely related to his underlying offense, because he continues to reach out to the victim of the offense, the owner of the stolen gun. Violating court orders, including protective orders is exactly the sort of continuing criminal conduct which makes a reduction for acceptance of responsibility unacceptable. *See United States v. Cook*, 698 F.3d 667, 672 (8th Cir. 2012) (finding that the District Court did not err when denying Defendant a reduction for acceptance of responsibility when after pleading, he sent a letter in violation of a trial order for protection).

Vandenberge's conduct fundamentally contradicts any genuine acceptance of responsibility for his criminal actions. It is critical to emphasize that he did not merely possess a firearm as a felon—he stole a gun from the victim he continues to harass. And in spite of a state protective order, a direct instruction from Acting Deputy Chief Walkington, as well as an admonishment from the Magistrate Judge, Vandenberge has repeatedly continued to contact T.T. In fact, in his most recent contact he has promised to keep contacting her: "I'll call you as soon as I get to the Fed prison [sic] April" (Government Exhibit 2, Page 1.)

In his statement to the Probation Officer, Vandenberge deliberately minimizes his criminal conduct. While nominally admitting possession of the firearm, he avoids

acknowledging the theft itself, only saying that he should not have brought the gun on vacation. As such, he attempts to recharacterize his crime as merely an error in judgment rather than the deliberate theft it was. Rather than demonstrating acceptance of responsibility, this shows an ongoing attempt to minimize culpability while he simultaneously continues to harass the very victim from whom he stole the firearm.

Viewed in its entirety, Vandenberge's persistent pattern of behavior is fundamentally incompatible with any meaningful acceptance of responsibility. This conclusion is particularly compelling given his flagrant disregard for the court's explicit directives and his ongoing harassment of T.T., who serves as both the victim of his crime and a potential witness against him. Based on this clear record of defiance and minimization, the Government respectfully urges this Court to deny the reduction for acceptance of responsibility and impose a sentence within the properly calculated guideline range of 41-51 months' imprisonment.

## IV.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

Using the factors enumerated in 18 U.S.C. § 3553(a), the Court must endeavor to impose a sentence that is "sufficient but not greater than necessary". *See* 18 U.S.C. § 3553(a). Specifically, the Court should look to the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. *Id.* A thorough

analysis of these factors supports a sentence at the high end of the properly calculated guideline range of 41-51 months.

A. **Nature and Circumstances of the Offense and History and Characteristics of the Defendant.**

Vandenberge's criminal history is both extensive and concerning. He has been actively engaged in criminal activity since as early as 1985, when he was convicted of his first felony for robbery. (R.26: PSR, PageID.77 ¶ 6.) Since then, he has been convicted of weapons offenses, motor vehicle theft, grand larceny, forgery, fraud, aggravated stalking, stalking after an injunction, and tampering with a witness or informant. (*Id.*) Prior to this offense, Vandenberge was convicted of thirteen felonies. (*Id.*) Vandenberge also has multiple misdemeanor convictions, including driving under the influence of alcohol and domestic violence. (R.26: PSR, PageID.92 ¶¶ 57-58.) Notably, the domestic violence offense involves the same victim as in the present case, T.T.

This pattern of criminality now spans nearly four decades, with a troubling progression toward harassment and intimidation of victims and witnesses. Of particular concern is the recurring pattern of stalking and domestic violence, culminating in the current offense where Vandenberge stole a loaded firearm from his intimate partner. His criminal history reveals not merely a disregard for the law, but an escalating pattern of defying court orders specifically designed to protect victims.

The nature and circumstances of the current offense are equally disturbing. Beyond the mere possession of a firearm as a felon, Vandenberge deliberately stole the weapon from his former partner, compromised her safety, and then illegally mailed the firearm through the U.S. Postal Service—creating additional public safety risks. His post-arrest conduct, including asking officers what would happen to him if he killed T.T., during an arrest at her residence, reveals a genuine threat to T.T.'s safety that cannot be dismissed.

### B. __The Need for Deterrence, Just Punishment and Public Protection__

A substantial sentence is necessary to address the remaining § 3553(a) factors. The theft of a firearm by Vandenberge—a defendant whose thirteen felony convictions over four decades clearly establish him as a career offender in the truest sense—presents an extraordinary risk to public safety, particularly to T.T., whom he has continued to contact in violation of court orders. Vandenberge's criminal history spanning four decades demonstrates that previous sentences have failed to deter his criminal conduct. His statement that he "already know[s] I'll be out this year" suggests he does not take these proceedings seriously. Given his demonstrated pattern of escalating harassment, persistent violations of court orders, and explicit threats, a significant sentence is essential to reflect the seriousness of his actions, provide meaningful deterrence, and protect T.T. and the public from substantial risk of future violence.

## V.    CONCLUSION

Given the nature and circumstances of the offense, Vandenberge's actions during the pendency of this case, and Vandenberge's history and characteristics, the Court should impose a sentence of at least 51 months.

Respectfully submitted,

ANDREW BYERLY BIRGE
Acting United States Attorney

Dated:  March 20, 2025

 /s/ Constance R. Turnbull
CONSTANCE R. TURNBULL
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501
Tel. (616) 456-2404